# IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

HOLLIE LEONARD, ELMER PARKER, )
individually and on behalf of all others )
Similarly situated, and Pamela Ward, )
  )
    Plaintiffs, )
  )
    **No. 3:04-0072**
v. )     **Judge Nixon**
  )     **Magistrate Judge Griffin**
SOUTHTEC, LLC and L & W )
ENGINEERING CO., )
  )
    Defendants. )

## MEMORANDUM ORDER

Pending before the Court is Plaintiff's Motion for Class Certification (Doc. No. 25), to which Defendant has filed a response and memorandum in opposition (Doc. No. 27). A hearing was held on this motion on June 2, 2005. For the reasons stated below, Plaintiff's motion is GRANTED.

## Background

Plaintiffs bring claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); 42 U.S.C. § 1981 ("§ 1981"); the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-01, et seq., ("THRA"); and Tennessee state law concerning retaliatory

-1-

discharge, codified at Tenn. Code Ann. § 50-1-304 (Supp. 1998). Plaintiffs' complaint includes both individual and class action allegations. The Court previously denied Defendants' motion to dismiss the class action allegations (Doc. No. 18).

Defendant Southtec, LLC ("Southtec") is an automotive supplier with a facility in Lebanon, Tennessee that employs approximately 100 persons. Defendant L & W Engineering Company ("L & W") routinely makes hiring, firing, and other management decisions for the Southtec facility.

Plaintiff Hollie Leonard ("Leonard") is an African-American female who was employed as a receptionist for Southtec in its Lebanon, Tennessee facility from June 2002 until October 2002. Leonard was hired as a temporary employee, but was subsequently hired on a permanent basis in August 2002. Leonard worked directly for Sherry Russell ("Russell"), the associate service manager.

Leonard's duties included maintaining a computerized spreadsheet of all new applicants for employment at Southtec. Leonard utilized information from the job applications, including racial demographic information, for the spreadsheet. As a part of the job application, new applicants were apparently instructed to fill out a "race sheet." If a race sheet was missing from the file, Leonard was instructed to place a blank sheet in the file. If a job applicant did not fill out the race sheet, then Southtec employees would apparently fill it out; in one instance a Southtec employee apparently filled in their observation that the applicant was a "minority." (Doc. No. 25, Ex. 5). Plaintiffs allege that supervisors reviewed the spreadsheet for racial and national origin demographic information and only invited White applicants to interview. Leonard's duties included contacting temporary employment agencies for workers. Plaintiffs

-2-

allege that Leonard was told by supervisors at Southtec to tell the temporary employment agencies "not to send 'no Mexicans,'" and was asked, "why don't you just get us some white boys?" According to Plaintiffs, supervisors made negative remarks about racial minorities around the workplace, such as, "you know these Mexicans and niggers smell bad."

During her employment, Leonard became pregnant with a high-risk pregnancy and informed her supervisor that she may need time off. Leonard ultimately resigned on October 29, 2002, and her resignation paperwork indicated that she was eligible for rehire. On or about January 20, 2003, Leonard was advised by Southtec employee Pam Ward ("Ward") that the receptionist position that Leonard previously had was open. Leonard apparently then contacted Tom Davidson ("Davidson"), the general manager at the Southtec facility, who told her to fill out a job application. On or about January 31, 2003, Leonard applied for the position. Soon after, Davidson told Ward and Russell that Leonard would not be hired for the receptionist position. On or about February 9, 2003, Southtec advertised for the position in the Tennessean newspaper. Plaintiffs allege that on February 24, 2003, Russell sent an internal email message to Davidson that discussed employment discrimination case law and "our last week's conversation about Hollie [Leonard] . . . You would have to be able to justify your stance for rejecting her for rehire despite her being qualified." In March 2003 hired Kayne Story, a White female, to fill the position. Leonard later told Russell that "something should be done about how they don't hire Black people," and Russell allegedly replied, "You know how they are."

Plaintiff Elmer Parker ("Parker") is an African-American male that was hired by L & W and who began working at Southtec on or about April 15, 2002 as an Information Technology Coordinator. Parker's duties included acting as a liason between Southtec employees and the

-3-

technical staff at L & W. Parker alleges that he was the only Black salaried employee and the only salaried employee that did not receive a pay raise. Parker alleges that he complained to Russell, Paul Keifer ("Keifer"), the Information Technology Director, and Mike Russian, an employee in L & W's human resources department, about the pay issue, but no action was taken.

In June or July of 2002, Parker reported to Keifer about potential misconduct in the workplace. Parker claims that "almost immediately" after reporting this wrongdoing, he "started experiencing problems." These problems allegedly included being harassed for missing work for doctor's appointments related to Parker's diabetes. On April 8, 2003, Southtec terminated Parker's employment for "failing to change passwords on all computers and for failing to disable Pam Ward's log in after her termination, among other reasons." Parker alleges that he was terminated as an act of retaliation and because of his race. Parker also asserts that during his employment, he did not receive pay raises as a result of his race and was subject to a racially hostile working environment.

Plaintiff Pam Ward ("Ward") is a White female who began working for Southtec on or about July 1, 2002. On April 8, 2003, Ward was terminated for allegedly falsifying time cards. Ward's claims are for retaliation and she is not seeking to be a class representative in this action.

Count I of the complaint asserts claims pursuant to Title VII and alleges that with respect to Leonard, Defendants denied Leonard the opportunity to be employed because of her race and that Defendants also created a hostile working environment based on race. Count I further alleges that with respect to Parker, Defendants denied Parker pay raises because of his race, exposed him to a hostile work environment because of his race, and terminated him for a fabricated reason. Count I of the complaint further alleges that with respect to Ward, Defendants

-4-

retaliated against Ward for associating with Leonard after she had filed an equal employment opportunity complaint.

Count II of the complaint realleges similar allegations under § 1981. Count III of the complaint realleges similar allegations under the THRA. Count IV of the complaint alleges retaliatory discharge under Tennessee law, asserting that Parker and Ward were discharged solely for refusing to participate in activities at the workplace that constituted a violation of Title VII.

Plaintiffs Leonard and Parker now move the Court to certify the case as a class action pursuant to Rules 23(a) and 23(b)(1) or 23(b)(2) of the Federal Rules of Civil Procedure.

## Legal Standards

The class-action device was designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979). Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." Id. at 701. In such cases, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." Id.

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. The Plaintiffs first have the burden of proving each of the four requirements of Rule 23(a). General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982). Plaintiff must prove: (1) that the class is so numerous that joinder is impracticable; (2) that questions of law or fact are common to the class; (3) that claims or defenses of named parties are typical of the claims or

-5-

defenses of the class; and (4) that the named parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)

If the prerequisites of Rule 23(a) are met, then one of the three following criteria listed in Rule 23(b) must be met in order to certify the class:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The district court has "broad discretion in deciding whether to certify a class . . . within the framework of Rule 23." In re Am. Med. Sys., 75 F.3d 1069, 1079 (6th Cir. 1996) (citations omitted). At the same time, courts must conduct a "rigorous analysis [to confirm] that the prerequisites of Rule 23(a) have been satisfied." Falcon, 457 U.S. at 161.

For purposes of this motion, this Court accepts as true Plaintiffs' allegations in the complaint. See Reeb v. Ohio Dep't of Rehab. & Corr., 221 F.R.D. 464 (S.D. Oh. 2004); see also

-6-

Shelter Realty Corp. v. Allied Maint. Corp., 574 F.2d 656, 661 n.15 (2d Cir. 1978). However the Court may "probe behind the pleadings." Falcon, 457 U.S. at 160 ("sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question").

## Discussion

### *Numerosity*

Plaintiffs state that "the proposed class consists of all former, current and future Hispanic and African-American employees, temporary or permanent, and job applicants who were either subjected to a discriminatory and racially and ethnically hostile work environment or were denied employment because of their race or national origin." (Doc. No. 25 at 5). Other portions of Plaintiffs' motion and arguments at the hearing make it clear that Plaintiffs also intend to include in their class individuals that were denied promotions or pay raises due to race or national origin (See, e.g., id. at 1) ("The common legal theories in this case are that Defendants have violated [laws] by discriminating against Plaintiffs and others similarly situated by considering race or national origin in their decisions to hire or not hire job applicants and in considering whether to promote or give pay raises").

According to Plaintiffs, "the exact number of potential class members is uncertain," but would "probably exceed 500." As proof, Plaintiffs submit that computer database records from Southtec allegedly show that between September 2002 and April 2003, over 78 Black or

-7-

Hispanic individuals applied for employment at the Southtec facility, and between December 2002 and December 2003, 336 Black or Hispanic individuals applied for employment at the Southtec facility. Plaintiffs allege that not one of these applicants was hired. Plaintiffs allege that "individuals who applied for employment at Southtec but were denied employment have already contacted the plaintiffs' counsel with interest in pursuing individual claims." Plaintiffs further submit that they know of no other African-Americans or Hispanics that were employed by Southtec, however they believe further discovery related to the class allegations may lead to more class members with hostile working environment, promotion, or pay raise discrimination claims.

Defendants assert that the numerosity requirement has not been met for several reasons. First, Defendants assert that if Plaintiffs' allegations regarding Defendants' hiring procedures are correct, there cannot be numerous individuals that were discriminated against with respect to promotions or salary increases, or subject to a hostile working environment. In response, Plaintiffs allege that Defendants have withheld discovery related to the class action allegations, so there very well may be more individuals that Plaintiffs do not yet know about. Second, Defendants claim that Plaintiffs have not proffered sufficient evidence to establish that there are several hundred individuals that were not hired due to their race or national origin. They claim that the computer spreadsheets Plaintiffs rely on do not establish that persons were subject to discrimination, that Plaintiffs have not identified any person who was not hired due to their race, and that Plaintiffs have not proffered any statistical analysis comparing the Defendants' workforce with the demographics of the Lebanon, Tennessee area.

The Court is not convinced by Defendants' arguments. The evidence so far indicates that there may be a great number of individuals with claims such that joinder will be impracticable,

-8-

and further discovery may only increase this number. Furthermore, Plaintiffs' need not introduce statistical evidence as this is a disparate treatment, not disparate impact, cause of action. Based on the evidence proffered by Plaintiffs, The Court finds that Plaintiffs have met their burden in showing that the class is so numerous that joinder will be impractical.

### *Commonality*

To show commonality, Plaintiffs must prove that there is at least one common question or issue shared by all class members. "The commonality test is qualitative rather than quantitative" in that "there needs to be only a single issue common to all members of the class." In re Am. Med. Sys. Inc., 75 F.3d 1069, 1080 (6th Cir. 1996). Moreover, the common issues must be ones the resolution of which will advance the instant litigation. See Sprague v. General Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998). When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be in common to all of the persons affected. Newberg on Class Actions § 3:10. Common issues in discrimination actions on the basis of race would be a discriminatory rule, practice, or policy. Id. Variations in the circumstances of class members are acceptable. See In re Am. Med. Sys. Inc., 75 F.3d 1069, 1079 (6th Cir. 1996); Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1197 (6th Cir. 1988) ("mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible").

The commonality and typicality requirements of Rule 23(a) has been heavily debated in racial discrimination claims particularly in light of the fact that racial discrimination "is by

Case 3:04-cv-00072   Document 46   Filed 09/08/05   Page 9 of 24 PageID #: 256

definition class discrimination." General Telephone Co. of the Southwest v. Falcon, 457 U.S.

147, 157 (1982). So as not to render all employment discrimination claims class actions, the

Supreme Court rejected the "across-the-board" rule that many courts had utilized to certify class

actions. The Court observed:

> Conceptually, there is a wide gap between (a) an individual's claim that he has
> been denied a promotion on discriminatory grounds, and his otherwise
> unsupported allegation that the company has a policy of discrimination, and (b)
> the existence of a class of persons who have suffered the same injury as that
> individual, such that the individual's claim and the class claims will share
> common questions of law or fact and that the individual's claim will be typical of
> the class claims. For respondent to bridge that gap, he must prove much more
> than the validity of his own claim.

Falcon, 457 U.S. at 157-58. However, the Court also identified two types of across-the-board

class actions that could satisfy the commonality and typicality requirements of Rule 23: first,

"[i]f [the defendant] used a biased testing procedure to evaluate both applicants for employment

and incumbent employees" and second, "significant proof that an employer operated under a

general policy of discrimination . . . if the discrimination manifested itself in hiring and

promotion practices in the same general fashion, such as through entirely subjective

decisionmaking processes." Falcon, 457 U.S. at 159 n.15; see also Reeb v. Ohio Dep't of Rehab.

& Corr., 81 Fed. Appx. 550 (6th Cir. 2003).

Considering Falcon's rule and the exceptions together, "Falcon stands for the proposition

that one person who suffered from one discriminatory act may not, merely because he is a

member of a protected group, bring a claim based on all discrimination suffered by all members

of that group at the hands of his employer." Reeb v. Ohio Dep't of Rehab. & Corr., 221 F.R.D.

464, 475 (S.D. Ohio 2004); see also Staton v. Boeing Co, 327 F.3d 938, 955 (9th Cir. 2003)

-10-

(Falcon "does not generally ban all broad classes but rather precludes a class action that, on the basis of one form of discrimination against one or a handful of plaintiffs, seeks to adjudicate all forms of discrimination against all members of a group protected by Title VII, § 1981, or a similar statute"). Indeed, the problem the Court recognized in Falcon was that the plaintiff alleged employment discrimination under a disparate treatment theory, while the class claim was based on a disparate impact theory of discrimination. See Falcon, 457 U.S. at 162 (Burger, C.J., concurring in part and dissenting in part) ("the only commonality is that respondent is a Mexican-American and he seeks to represent a class of Mexican-Americans); see also Reeb, 221 F.R.D. at 475 (noting same).

Plaintiffs argue that there are two questions of fact and law that are common to the class: (1) the "use of pre-employment inquiries and race sheets in personnel files"; and (2) "discriminatory treatment." Plaintiffs assert that the representative Plaintiffs' claims and the claims of class members "arise out of the same practice and conduct of Defendants," and such common injury satisfies the commonality requirement. In response, Defendants argue that there is not one legal or factual question common to Plaintiffs' differing claims and the proposed class would be of the type of generalized across-the-board allegation of discrimination rejected in Falcon. Defendants argue that in addition to the failure to promote and failure to hire claims, Plaintiffs seeks to certify a class that would encompass claims of failure to hire, wrongful termination, failure to promote, salary discrimination, and hostile working environment. Defendants also argue that Leonard's failure to re-hire claim is completely unique to her. The Court will address in turn each of the questions Plaintiffs claim are common to the class.

First, Plaintiffs assert that a common question of fact to the class as a whole is "whether

-11-

or not Southtec used race or national origin as a factor to consider in deciding whether to hire job applicants or promote employees." Plaintiffs have asserted that Southtec requested job applicants to indicate their race on a race sheet If they refused, the person accepting the application would write their own observation of an applicant's race. This race sheet was apparently attached to applicants' personnel files and, according to Plaintiffs, "was the first thing that managers and Human Resources would look at and all employees were required to have a race sheet in their personal files." Based on this, as well as the evidence of racially disparaging comments by supervisors in the workplace, Plaintiffs assert that a common question of fact is whether Southtec utilized race or national origin as a factor to consider in deciding whether to hire job applicants or promote employees

The Court does not find that the use of "pre-employment inquiries and race sheets in personnel files" as such is an issue in common to all class representatives and members. First, the class representatives themselves were not hired through Southtec's typical hiring procedures. Leonard was referred and hired through a temporary employment agency and Parker was hired by L & W and assigned to the Southtec plant. Plaintiffs have not asserted that a race sheet was used with respect to either Leonard or Parker. Moreover, while the issue of whether Defendants considered race or national origin in hiring might be an issue of fact in common to many of the class members, including Leonard, it would not necessarily be an issue in common for those class members with hostile working environment or pay raise or promotion claims, such as Parker.

The second issue Plaintiffs argue is common to the entire class is "disparate treatment." Plaintiffs indicate that whether Plaintiffs and other Blacks and Hispanics that worked or applied

-12-

for employment at Southtec were mistreated due to race or national origin is a common question

of fact. Plaintiffs allege that Defendants' decision-making processes with respect to hiring and

pay raises or promotions, as well as whether one was subjected to a hostile working environment,

were based entirely on race or national origin. This is an across-the-board allegation of

discrimination. However, such an across-the-board allegation may still meet the commonality

requirement where there is "significant proof that an employer operated under a general policy of

discrimination . . . if the discrimination manifested itself in hiring and promotion practices in the

same general fashion, such as through entirely subjective decisionmaking processes." Falcon,

457 U.S. at 159 n.15. The Court finds that Plaintiffs' allegations suggest that the defendants

operated under a general policy of discrimination in that there was an entirely subjective

decisionmaking process as to hiring, pay raises, and promotions, as well as whether one

experienced a hostile working environment.

Defendants' arguments about the variety of legal theories and differences in the Plaintiffs'

individual situations are of no avail. The fact that different legal theories are alleged does not

mean the commonality requirement is not met. Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th

Cir. 1998) ("The existence of shared legal issues with divergent factual predicates is sufficient, as

is a common core of salient facts coupled with disparate legal remedies within the class.") As

the Court recognized in Falcon, Title VII prohibits discrimination based on specific employment

practices. See Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1569-70

(11th Cir. 1992) (finding Falcon permits class certification of race or sex based claims if the class

challenges specific employment practices). Here, Plaintiff alleges the specific employment

practices of creating a hostile working environment, discriminatory treatment in hiring, and

-13-

discriminatory treatment in pay raises and promotions. More than one specific employment practice can be alleged in a class action. See Staton v. Boeing Co., 327 F.3d 938, 954 (9th Cir. 2003) (upholding a class action where the class "complains of a complex of discriminatory practices that includes compensation, training, and work environment in addition to promotions"); Reeb, 221 F.R.D. at 464 (upholding a class action where alleged employment practices included general claims of differential treatment and standards based on sex including the requirement that women more often perform the undesirable duties, the inability to apply for temporary positions, denial of training opportunities and leave, use of excessive discipline, failure to promote, and retaliation for filing grievances or complaints about discriminatory treatment). In fact, Falcon explicitly found that a class could be certified that encompassed failure to promote and failure to hire claims. See Falcon, 457 U.S. at 159 n.15 (commonality and typicality could be satisfied "if the discrimination manifested itself in **hiring and promotion practices** in the same general fashion, such as through entirely subjective decisionmaking processes") (emphasis added). The addition of pay raise discrimination and hostile work environment claims does violate the mandates of Falcon.

Further, Defendants' argument that the potential class members would consist of African-Americans, Hispanics, temporary employees, permanent employees, supervisory employees, and non-supervisory employees is of no avail. Defendants cite no case law to support the proposition that these different individuals cannot together set forth a series of legal issues that meet the commonality requirement. The Court finds that it is appropriate to include Blacks and Hispanics in the same class where the discrimination alleged is based on race and national origin. Where the policy appears to be "Whites only," then the discriminatory employment practices based on

-14-

race and national origin take the same form, and the injury and remedy would be the same. Furthermore, temporary, permanent, supervisory, and non-supervisory employees may all be part of the class. For purposes of commonality, the Court does not find any significance in the fact class members may be of a different status so long as there are questions of fact and law in common as there are here.

Finally, Defendants' argument that Leonard's failure to re-hire claim is unique to her is of no avail. The Court finds no distinction between a failure to re-hire claim and a failure to hire claim for purposes of class certification in the context of this case. Both ultimately result in a failure to be employed based on race or national origin. As discussed above, class actions inevitably involve factual scenarios unique to individuals in the class. See In re Am. Med. Sys. Inc., 75 F.3d 1069, 1079 (6th Cir. 1996); see also Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1197 (6th Cir. 1988).

Ultimately, the Court finds that a common question exists as to whether Defendants operated under a general policy of intentional and subjective discrimination in which employees and potential employees were discriminated against on the basis of race and national origin in hiring decisions, pay increase and promotion decisions, and in their working environment. Plaintiffs therefore meet their burden with respect to the commonality requirement.

*Typicality*

Typicality refers to the nature of the claim or the defense of the class representative and not to the specific facts from which it arose or to the relief sought. Newberg on Class Actions § 3:15. To show typicality, Plaintiffs must demonstrate that their claims and the claims of the class

Case 3:04-cv-00072 Document 46 Filed 09/08/05 Page 15 of 24 PageID #: 262

are based on the same course of conduct and legal theories. According to the Supreme Court:

> commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances if maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

Falcon, 457 U.S. at 147 (cited in Rutherford v. City of Cleveland, 137 F.3d 905, 909 (6th Cir 1998)).

Plaintiffs argue that typicality is met because "Plaintiffs' claims and the claims of the class are based on allegations that Defendants have a pattern and practice or policy of discriminating against Blacks and Hispanics and of considering race and national origin in making hiring and promoting decisions. The same type of injury has been suffered as well - the failure to be hired or promoted based on one's race or national origin."

Defendants argue that typicality does not exist because the claims of Parker and Leonard raise unique factual and legal theories. First, Defendants assert that Parker's claim rests on his assertion that he was terminated in retaliation for reporting allegations of computer and inventory fraud. Defendants assert that no one in the putative class would have such a claim, so his claims are not typical of the class. However, as Plaintiffs stated in the hearing, Plaintiffs do not seek to include any retaliation claims in the class action.

Defendants claim that Leonard's claims are also not typical of the class because she raises claims of pregnancy discrimination and of a failure to rehire, as opposed to failure to hire. Defendants submit that they will submit defenses that are completely unique to Leonard, asserting for example that the fact that the same group of people both hired and fired Leonard over a short period of time is strong evidence that the failure to rehire was not due to

-16-

discrimination.

First, there are no pregnancy-related claims in this cause of action. While the complaint suggests that there are some issues of fact with respect to Leonard's pregnancy and her employment, not one of the four counts in the complaint sets forth a pregnancy-related claim. Next, as discussed above, the Court finds no distinction between a failure to rehire and failure to hire claim in the context of this case, and Defendants cite no authority to the contrary. Finally, and as also discussed above, the fact that the defendant may have a unique defense does not defeat a class action. For the reasons above, the Court is persuaded that Plaintiffs have met their burden on the typicality requirement.

### *Adequacy of Representation*

The commonality and typicality requirements "also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." Falcon, 457 U.S. at 158 n.13. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624 (1997) (citations omitted). "[T]he two factors that are now predominately recognized as the basic guidelines for the Rule 23(a)(4) prerequisite are (1) absence of conflict and (2) assurance of vigorous prosecution." Wright, Miller, & Kane, Federal Practice And Procedure §§ 1768 at 326 (2d ed. 1986). As such, the Court will look at the adequacy of representation related conflicts of interest, common interest, and common injury.

-17-

Plaintiffs assert that their claims and legal theories are those of the other potential class members, they seek the same relief as others in the class, and there is no conflict between class members. Plaintiffs further assert that they have hired adequate and competent counsel, including an attorney who has litigated prior class action lawsuits.

In response, Defendants first argue that Parker and Leonard are not adequate class representatives because, as African-Americans, they have not suffered the same injuries and do not have the same interests as the Hispanic class members. Defendants also argue that Leonard and Parker are not adequate class representatives for class members with claims for a racially hostile working environment because both Leonard's and Parker's hostile working environment claims are procedurally barred. According to Defendants, their claims are now barred because Leonard and Parker did not include a hostile environment claim in their United States Equal Employment Opportunity Commission charge of discrimination.

As stated above, the Court finds no substantive distinction in the context of this case between discrimination claims based on national origin and race. While Defendants assert that the hostile working environment claims are procedurally barred, this issue has not been raised before this Court and Defendants cannot rest on the assumption that the claims are not meritorious.

The Court finds that Plaintiffs have met their burden with respect to the adequacy of representation element. The Court finds that there is a common injury of discriminatory treatment and a common interest in ending the alleged discriminatory treatment at the Southtec facility. Furthermore, there are no conflicts of interest that would preclude class action litigation, and the Plaintiffs' counsel and class representatives are adequate. Therefore, Plaintiffs have met

-18-

their burden for each of the 23(a) elements, and so the Court must determine whether the class is certifiable under Rule 23(b)

### *Certification Under Rule 23(b)*

In order to certify a class under Rule 23(b), the Court, after determining that the four prerequisites of Rule 23(a) have been fulfilled, must consider whether the class Plaintiffs seek to represent falls into one of the subcategories of Rule 23(b). Plaintiffs argue that the class is certifiable under both Rules 23(b)(1) and 23(b)(2).

Rule 23(b)(1) has two distinct sections, under either of which a Court may certify a class action. Under 23(b)(1)(A), certification is proper where individual actions would create a risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Under 23(b)(1)(B), certification is proper where individual actions would create a risk of "adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests."

First, with respect to Rule 23(b)(1)(A), Plaintiffs assert that, absent class certification, numerous separate actions almost certainly would be brought against the Defendants challenging their discriminatory employment practices, such as considering race and national origin in hiring and promoting decisions. Plaintiffs assert that several individuals have contacted Plaintiffs' counsel with interest in pursuing such individual claims. Plaintiffs assert that if individual claims proceeded, conflicting adjudications could make compliance impossible for Defendants.

-19-

Defendants claim that class certification under Rule 23(b)(1)(A) is not appropriate when a

defendant objects to class certification because that rule is designed to protect the party opposing

opposition. Defendants also cite to In re Bendectin Products Liabilty Litigation, 749 F.2d 300,

205 (6th Cir. 1984), for the proposition that where some plaintiffs might be successful and others

not, Rule 23(b)(1)(A) certification is not appropriate

With respect to Rule 23(b)(1)(B), Plaintiffs assert that if individual claims proceeded,

conflicting adjudications could adversely affect the interests of absent class members.

Defendants argue that Plaintiffs' position is contrary to law, because future plaintiffs will not be

bound by adjudication of Plaintiffs' individual claims. The Court reserves judgment on whether

certification is proper under Rule 23(b)(1) and looks to the merits of certification under Rule

23(b)(2)

Certification under Rule 23(b)(2) is appropriate where "the party opposing the class has

acted or refused to act on grounds generally applicable to the class, thereby making appropriate

final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

An action in which both injunctive relief and monetary damages are sought may be certified as a

class under Rule 23(b)(2), as long as monetary damages do not constitute the predominate type of

relief requested. Coleman v. General Motors Acceptance Corp., 296 F.3d 443, 446 (2002); see

also Fed. R. Civ. P. 23(b)(2) advisory committee's note (subdivision "does not extend to cases in

which the appropriate final relief relates exclusively or predominantly to money damages").

As the Court finds that the party opposing the class has acted or refused to act on grounds

generally applicable of the class, the only issue is whether monetary damages constitute the

predominant type of relief requested. In their motion, Plaintiffs argue that they seek a permanent

-20-

injunction preventing Defendants from discriminating against class members due to race or national origin and claim that monetary relief is an ancillary remedy in this action. In the complaint, Plaintiffs request compensatory damages, including back pay and front pay; punitive damages; attorneys fees and costs; injunctive relief in the form of an order compelling compliance with equal employment laws and the posting of regulatory posters and sensitivity training for all employees; and other relief as the Court finds necessary. Plaintiffs stated in the hearing that they are willing to forego the pursuit of punitive damages if necessary for class certification.

Defendants argue that monetary relief is not incidental in this action, and, as such, certification is not proper under 23(b)(2). Defendants rely primarily on <u>Allison v. Citgo Petroleum Corp.</u>, 151 F.3d 402, 417 (5th Cir. 1998) and its progeny for the propositions that for injunctive relief to predominate under Rule 23(b)(2), monetary damages must be "incidental" and "flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief," and "compensatory damages under Title VII and 42 U.S.C. § 1981 are not incidental to class-wide injunctive or declaratory relief for discrimination." <u>Id.</u>

Defendants argued in the hearing that <u>Coleman</u> stands for the proposition that the Sixth Circuit has accepted the <u>Allison</u> analysis. In <u>Coleman</u>, the Sixth Circuit noted that money damages are recoverable by a Rule 23(b)(2) class in "certain situations," but were not recoverable in cases brought under the Equal Credit Opportunity Act. <u>Id.</u> at 447. The Court cautioned that "close scrutiny is necessary if money damages are to be included in any mandatory class to protect the individual interests at stake." <u>Id.</u> at 448. This Court finds that it is not clear that the Sixth Circuit has, in fact, followed the mandates of <u>Allison</u>. See <u>Reeb</u>, 81 Fed. Appx. 550 (6th

-21-

Cir. 2003) ("[w]e decline to determine on this record the proper standard for class certification under Rule 23(b)(2) where plaintiffs seek monetary as well as equitable relief); Coleman, 296 F.3d at 446 ("This court has not explicitly addressed the question of whether compensatory damages are recoverable by a Rule 23(b)(2) class.").

At least two district courts in the Sixth Circuit have addressed this issue, and came out against the mandates of Allison. Referring to Hoffman v. Honda of Am. Mfg., Inc., 191 F.R.D. 530 (S.D Ohio 1999), decided by Chief Judge Rice of the Southern District of Ohio, the Reeb court explained:

> Judge Rice [declared] that district courts could determine which type of relief predominates after considering the evidence and arguments of counsel, and then weighing the relative importance of the remedies sought in light of the specific facts and circumstances of the case.
>
> The Court recognizes the persuasiveness of Hoffman in light of the stated purpose of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a ("1991 Act"). The 1991 Act, which made compensatory and punitive damages available to plaintiffs claiming intentional discrimination under Title VII, was intended to broaden the relief available to such plaintiffs, not curtail their ability to bring such claims through the vehicle of class actions. In broadening Title VII plaintiffs' options for relief, Congress did not intend to force plaintiffs to choose between broad relief and the advantageous vehicle by which that relief could be sought. . . . This Court cannot and will not now read the Rules of Civil Procedure as eviscerating the substantive rights granted by Congress. Furthermore, Hoffman follows logically from the plain language of Rule 23(b)(2), which requires only that final injunctive and corresponding declaratory relief be appropriate under the circumstances of the case. Neither the Rule nor the accompanying Advisory Committee Note requires that damages be incidental to the equitable relief sought in order for a class to be certified under 23(b)(2).

Reeb v. Ohio Dep't of Rehab. & Corr., 203 F.R.D. 315, 322 (S.D Ohio 2001); see also Reeb v. Ohio Dep't of Rehab. & Corr., 221 F.R.D. 464, 475, 480 (S.D. Ohio 2004) (reaffirming this principle on remand after the Coleman decision was issued). The Second Circuit Court of Appeals and the District of Columbia federal district court have also rejected the Allison bright-

-22-

line rule. Taylor v. Dist. of Columbia Water & Sewer Auth., 205 F.R.D. 43 (D.D.C. 2002); Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147 (2d Cir. 2001).

This Court agrees with the Reeb analysis and also finds that while Plaintiffs have requested monetary damages along with injunctive and declaratory relief, the equitable relief sought clearly predominates in this action. The record and arguments at the hearing demonstrate that Plaintiffs' primary goal is to end discriminatory practices at the Southtec facility and insure that Defendants treat employees and prospective employees of all races and national origins the same. The Court is highly persuaded by the fact the Plaintiffs indicated a willingness to forgo pursuit of punitive damages altogether. Therefore, under the particular circumstances of this case, certification under Rule 23(b)(2) is proper.

## Conclusion

The Court finds that a class action is appropriate with respect to the claims of discrimination on the basis of race and national origin in the practices of hiring, pay raise and/or promotions, and hostile working environment. The class shall consist of all former, present, and future employees of Defendants at the Southtec plant in Lebanon, Tennessee. As such, Plaintiff's motion is **GRANTED.** However, in consideration of the lack of discovery with respect to the pay raise, promotion, and hostile working environment issues, the Court conditionally certifies this class action pursuant to Rule 23(c)(1). To the extent that further discovery calls into question any of the class action requirements with respect to all or some of the claims, Defendants may, of course, file a motion to de-certify the class or the Court can redefine the class, create subclasses, or take other measures to manage the class action where appropriate.

-23-

It is so ORDERED.

Entered this the _1ˢᵗ_ day of _September_, 2005.


JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

-24-